## TIBLIER v. ALFORD.[*]

*(Circuit Court, E. D. Louisiana. May, 1882.)*

1. UNLAWFUL ATTACHMENT—MALICE—DAMAGES.

In an action for damages for an unlawful seizure under attachment, if the seizure is proved wrongful, but made in good faith, the jury should find for the plaintiff for actual damages only; but if they should find that the seizure was made in bad faith and maliciously, they might assess proper punitory damages in addition to actual damages proved.

2. PUNITORY DAMAGES.

Punitory damages are not allowed for the purpose of rewarding beyond compensation the injured party, but as a punishment to deter others from like conduct.

3. EVIDENCE AND PRESUMPTION OF MALICE.

A seizure is wrongful if made without proper legal grounds to sustain it, and while malice is to be proved, yet the jury may infer it from evidence satisfying them of the wantonness of the seizure and oppressive conduct on the part of the defendant, taking into consideration all the evidence in the case.

4. GROUNDS FOR ATTACHMENT—REPRESENTATIONS.

If the affidavit for the attachment was based upon representations made by the plaintiff (defendant in attachment) to the defendant, (plaintiff therein,) or to other persons and communicated to him, the jury should find for the defendant; but on this question they cannot consider representations made to other persons and not communicated to the attaching creditor, for such representations could not have influenced his action.

*Joseph P. Hornor* and *Francis W. Baker,* for plaintiff.

*B. R. Forman,* for defendant.

PARDEE, C. J. The plaintiff has recovered a verdict against the defendant for the sum of $2,500, and interest, amount of damages suffered by the illegal and malicious issue of an attachment. The defendant moves for a new trial on several grounds, mainly:

(1) That the court erred in not charging the jury, as requested by defendant, "that in an action for damages beyond the amount of the bond, for an attachment, the plaintiff must prove malice and want of probable cause." (2) Because, if any such charge, or its equivalent, was given, the jury did not so understand it, or disregarded it. (3) Because the defendant was taken by surprise, while being examined as witness, when he was about to state that the other witnesses, Corbin, Hendricks, and others, had informed him that Tiblier had represented himself to be a resident of Texas, he was interrupted by counsel for plaintiff, and he understood the court to exclude such testimony as hearsay; and he was taken by surprise when the court instructed the jury that the testimony of these witnesses "that Tiblier had represented to them that he was a resident of Texas" must be disregarded, unless it had been communicated to defendant; and thus, through the misap-

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

prehension of himself and his counsel as to the ruling of the court, injustice has been done him. (4) Because the verdict of the jury does not fix the time when interest shall begin to run, nor the rate of interest, and **no** interest is allowed on damages *ex delicto*. (5) And because the damages are grossly excessive, and no actual damages were proven.

The evidence on the trial tended to show that Alford, defendant, a citizen of Kentucky, made a contract with Tiblier, a citizen of Louisiana and dealing in Texas stock, for the sale and delivery of certain mules, at fixed prices. The mules, when tendered, did not fill the contract as to quality, and were rejected by Alford, who thereupon brought suit in the state court for $1,000 damages against Tiblier for non-compliance with the contract. Without making due inquiry as to the residence of Tiblier, Alford made affidavit in the suit that Tiblier was a non-resident of the state of Louisiana, and made application for a writ of attachment, which was granted on a bond for $1,000. Under the attachment Alford caused the seizure of 100 mules, worth about $4,000, and garnished Regan, a debtor of Tiblier, for $1,500 more.

In addition, as stated in his petition for attachment, he retained in his own hands $315 which he owed Tiblier on another transaction. Tiblier procured the release of his mules on the next day, by giving bond in the sum of $1,500, with two sureties, for whose security he was required to deposit with each $750. He recovered his debt from Regan in about three months, and his deposit back from his sureties—from one in two months, and from the other in a year. During the delays in releasing the moneys so tied up by reason of the attachment, his business, proved to have been a profitable one both here and in Texas, was broken up. He paid in attorney's fees $150. On the next day after the attachment he moved for a dissolution of the same on the ground of his residence in Louisiana, and the consequent falsity of the affidavit. This motion was resisted by Alford, and through the delays of the law it was only heard with the merits of the case, and was dissolved for the reasons named when the final judgment was rendered.

The defendant recovered $500 damages on his contract with Tiblier, and he swore himself, on this trial, that Tiblier told him he was a resident of Texas. He also offered a number of witnesses who testified that they had understood from, or had been informed by, Tiblier that he was a resident of Texas. No time was shown, whether before Alford's affidavit or after, when these understandings were had, or representations were made, but it generally appeared that

there was nothing upon which to base the evidence, more than inferences derived from Tiblier's business as a Texas stock dealer, and his talk in relation to a ranch and other interests there.

The tendency of the whole case was that Alford had sworn out his attachment without inquiry, and recklessly, and had caused its execution in the same reckless manner by excessive seizure of property.

No bills of exception were taken on the trial, and no evidence has been offered on this rule, so that, as far as matters took place then, the court can only consider its own notes and recollection.

As to the first and second grounds, my recollection is that I charged the jury that this was not an action on the bond given for an attachment, but an action for damages for a wrongful seizure, and if they should find that the seizure was wrongful, but made in good faith, they should find for the plaintiff, giving him only actual damages proved; but if they should find that the seizure was wrongful, and made in bad faith or malicious, they might assess proper punitory damages in addition to actual damages proved. Further, that a seizure was wrongful if made without proper legal ground to sustain it, and that while malice was to be proved, yet the jury might infer it from evidence satisfying them of the wantonness of the seizure and oppressive conduct on the part of the defendant, "and taking into consideration all the evidence in the case." I still think this was correct, and the jury fully understood me, and regarded the charge.

As to the third ground, I am of the opinion there was no occasion for the surprise of either the defendant or his counsel. All the evidence they offered was admitted, and before the defendant testified, on ruling as to the admissions of the depositions to which counsel for plaintiff objected, I distinctly stated, and, my recollection is, more than once, that evidence of representations made by Tiblier as to his residence, to other parties than the defendant, could not be received by the jury as bearing on the good faith actuating the defendant in making the affidavit for the attachment, unless it was shown that such representations were communicated to the defendant. The proposition that Alford could not have been influenced by representations he had never heard of, is so self-evident that I doubt if counsel could have been surprised even if I had not announced it. The instruction to the jury on the subject was "that if they found from the evidence that the affidavit of Alford was based upon representations made by Tiblier to him, or made by Tiblier to other persons and communicated to him, they should find for the defendant; but

that, on this question, they could not consider representations made to other persons and not communicated to the defendant, for such representations could not have influenced his action." Such instructions ought not to have surprised the defendant or his counsel, and if they did it would hardly be deemed a good reason for a new trial. And a new trial would hardly help the matter, because all the suggestion of the defendant on the subject, made in his motion or in argument, is that on a new trial the defendant himself would swear that such representations were communicated to him prior to making the affidavit. I recollect that on the trial of the case defendant swore positively that Tiblier had told him that he (Tiblier) resided in Texas, while Tiblier swore that he had told him no such thing. The jury seems to have believed Tiblier. *Non constat* that another would not do the same.

With regard to the fourth and fifth grounds—excessive damage and interest—it has been brought to my attention since the argument that the plaintiff has entered a *remitter* of $1,000 and all interest prior to date of judgment, reducing the verdict and judgment to $1,500. The actual damages proved by plaintiff on the trial were: the sum paid for counsel fees, $150; interest on $1,500 of Regan for two months, $12.50; interest on $750 for three months, and interest on $750 for one year, $46.87; total, $220.37. The breaking up, for two months, of his business, in the nature of consequential damages, was proved to have been as much as alleged in the petition—$600 per month. These latter damages were properly considered by the jury in making up their verdict, if they found, as they evidently did, that the seizure was wrongful, wanton, and malicious. These damages, actual and consequential, amounting to $1,420.27, substantially compensate the plaintiff, and in my opinion sufficiently admonish the defendant. Exemplary or punitory damages are not allowed for the purpose of rewarding, beyond compensation, the injured party, but as a punishment, to deter others from like conduct. This whole matter is very fully treated in Sedgwick on Damages, chapter entitled "Exemplary Damages."

In this case the verdict as reduced, in my judgment, properly vindicates the law and promotes the ends of justice.

Let the motion for a new trial be overruled and discharged.