323 So.2d 373

**Harold A. WEBB**

v.

**PIONEER INSURANCE CO.**

**Civ. 638.**

Court of Civil Appeals of Alabama.

Dec. 3, 1975.

Crenshaw & Minor, Montgomery, for appellant.

Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, for appellee and cross-appellant.

HOLMES, Judge.

This is an appeal from a judgment rendered in the Circuit Court of Montgomery County. The trial judge found in favor of defendant-appellee and against plaintiff-appellant.

The issues on this appeal are whether the lower court erred in admitting into evidence photographic or photostatic copies of the corporate defendant's business records, and whether defendant is legally obligated to pay plaintiff certain termination pay. We find the answer in both instances to be negative.

Examination of the record reveals the following information necessary for an understanding of this lawsuit:

The defendant-appellee Pioneer Insurance Company is a Nebraska corporation. In the spring of 1973, defendant encountered certain difficulties with the Nebraska Department of Insurance, concerning its financial condition. By October 16, 1973, an agreement had been reached whereby, under the terms of a voting trust to come into being in November, the control of defendant would effectively be taken over by the Department of Insurance and certain creditor banks.

On October 29, defendant's board of directors adopted a plan providing termination pay for certain employees. Under this plan, five top level officers of defendant, including plaintiff Webb, were granted ninety days of termination pay aggregating approximately $40,000. On November 15, a new board of directors, elected under the voting trust, assumed management of defendant. This new board, on November 28, resolved to take no action with respect to providing termination pay for the old officers. Put another way, the new board resolved not to make any additional payments of termination pay.

Plaintiff-appellee received one payment of thirty days' termination pay on November 14, the day before the new board of directors took control of defendant. It can be noted that this was the only disbursement of termination pay made under the plan of the old board. This suit was instituted by plaintiff-apppellee to recover the remaining $5,200 of termination pay.

■ At the outset, we note the contention of plaintiff-appellant's distinguished and experienced counsel that the lower court erred to reversal in admitting into evidence photographic or photostatic copies of minutes taken at meetings of defendant's board of directors.

Rule 44(h) ARCP, pertinent here, provides in applicable part as follows:

"Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if it was made in the regular course of any business, profession, occupation, or calling of any kind, and it was the regular course of the business, profession, occupation or calling to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter. Such a writing may be photostated, or it may be photographed or microphotographed on plate or film, and such photostat, photographic or microphotographic plate or film, or prints thereof, whether enlarged or not, shall be deemed to be an original record and shall be presumed to be a true and correct reproduction of the original record it purports to represent. The circumstances of the making of such writ-

ing or record, including lack of personal knowledge by the entrant or maker, and the circumstances of making such photostat or other photographic copy thereof, may be shown to affect its weight but they shall not affect its admissibility. . . ."

The cases cited by plaintiff-appellant concerning the application of the best evidence rule are inapposite here, in that none of them treat the admissibility of photostatic or photographic copies of original records made in the regular course of a business. The materials which ran afoul of the best evidence rule in the cited cases were copies made from summaries, memoranda of original records, and copies of instruments which were not regularly kept business records.

The pertinent copies in this instance were identified by an officer of the company, who was custodian of the corporate records and who was present at the meetings in question. He identified the documents as being true and correct copies, and as actually reflecting what transpired at the board meetings. Under such circumstances, clearly Rule 44(h) allows photostatic or photographic copies to be introduced.

■ As seen from the above, no error was committed by the lower court in allowing the copies of the minutes into evidence. However, even if error is presumed, any such error would be harmless. The only pertinent fact which the copies in controversy served to prove was the refusal of defendant-insurance company to award plaintiff-appellant any further severance pay, which fact was sufficiently evidenced by the instant lawsuit itself.

■ In order for plaintiff-appellant to recover the remainder of the termination pay, he must show that he has a vested right thereto. This is so because a corporate board of directors may rescind action taken by a predecessor board unless that rescission would disturb a vested right. 19 Am.Jur.2d, *Corporations,* § 1159, p. 586. The only theories by which plaintiff-appellant can demonstrate a vested right to the termination pay, are that defendant has either contracted to pay him or is estopped to not pay him. Neither theory can avail plaintiff in this instance.

■ Viewed with the attendant presumptions of correctness, the tendencies of the evidence are that the October 29 resolution made an unconditional award of monies to plaintiff. While plaintiff indicated his willingness to provide consultant services to defendant after his departure, the evidence indicates that plaintiff was not required to perform any act in return for the award of termination pay.

It cannot be ascertained when plaintiff stated he would consult with defendant, but his receipt of termination pay does not appear to have been predicated upon his holding himself in readiness to perform such services. As such, the trial judge could have found that the award of termination pay and plaintiff's willingness to consult were not bargained for and given in exchange for each other. There was thus no consideration, and consequently no contract. See 17 Am.Jur.2d, *Contracts,* § 92; *Roberts v. Lindsey,* 242 Ala. 522, 7 So.2d 82; 8A Words and Phrases, "Consideration," at p. 276.

■ The award of termination pay being a mere gratuity under the above line of reasoning, plaintiff in order to prevail must show defendant is estopped to deny him payment. The party seeking to claim the benefit of an estoppel must show detrimental reliance of a substantial character on his part. 28 Am.Jur.2d, *Estoppel and Waiver,* § 78, at p. 716; *Mitchell v. Friedlander,* 246 Ala. 115, 19 So.2d 394. Here, plaintiff has testified that his only reliance upon the award of monies was that he would have participated more strenuously in salary negotiations with his present employer. We find this conduct, under the

circumstances of this case, to be too speculative for imposition of the doctrine of estoppel.

Plaintiff, in this regard, relies upon the fact that his salary during his first three months with his present employer was somewhat lower than he would have desired. However, by his own testimony plaintiff stated that this was due to certain internal problems with his employer's organization.

We finally note that plaintiff had been employed with defendant for only twenty months, that he had no contract of employment but was employed on a month to month basis, and that there was considerable testimony to the effect that not only did the Nebraska Department of Insurance not desire plaintiff's consultant services, but actively distrusted and was hostile to him. Under these circumstances, we cannot say that the action of defendant-insurance company, in refusing to carry out the termination pay resolution, was in such bad faith or so unreasonable as to warrant judicial intervention.

There being no error in the record, the case is due to be affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.