Samuel JONES, Jr., Plaintiff,

v.

PREUIT & MAULDIN, a partnership,
et al., Defendants.

Civ. A. No. 84–AR–5131–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

May 23, 1986.

Addendum May 28, 1986.

C.V. Stelzenmuller, F.A. Flowers, III, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., Harold L. Speake, J.G. Speake, Speake, Speake & Reich, Moulton, Ala., for plaintiff.

T. Michael Putnam, Potts, Young, Blasingame, Suttle & Putnam, Florence, Ala., for defendants.

Charles Graddick, Atty. Gen., Ronald C. Forehand, Asst. Atty. Gen., Montgomery, Ala., for Non-Party, State of Ala.

## MEMORANDUM OPINION

ACKER, District Judge.

On June 15, 1984, this court granted the motion of defendant Preuit & Mauldin, a partnership, to dismiss the above entitled action brought by plaintiff, Samuel Jones, Jr. This court's opinion at that time was based exclusively on its belief that Jones' cause of action under 42 U.S.C. § 1983 was barred by Alabama's one year statute of limitations. *Jones v. Preuit & Mauldin,* 586 F.Supp. 1563 (N.D.Ala.1984). In light of *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), decided several months after this court's ruling of June 15, 1984, the Eleventh Circuit reversed and remanded the case on June 21, 1985. *Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985). The Supreme Court denied certiorari on January 27, 1986, with Justice White dissenting, —— U.S. ——, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986).

■ The only issue in this case thus far addressed by any judge of this court, the Eleventh Circuit or the Supreme Court, has been the question of the appropriate statute of limitations to be applied to a § 1983 action in Alabama. The law of the Eleventh Circuit now is that the § 1983 statute of limitations in Alabama is six years, so that Jones' cause of action is not time barred.

Upon remand, Preuit & Mauldin interposes other defenses and has filed a motion for summary judgment which will now be granted for the separate and several reasons hereinafter discussed.

As noted by Justice White, Jones is "an Alabama farmer who brought a § 1983 action against petitioners [Preuit & Mauldin] for allegedly violating his Fourteenth Amendment due process rights by causing his equipment to be seized pursuant to prejudgment attachment writs that petitioners obtained without notice or a hearing". 106 S.Ct. at 893. Jones' original complaint did not expressly claim that

§ 35–11–111, Ala.Code (1975) (the only Alabama statute actually mentioned in Jones' complaint) was unconstitutional, but did claim broadly that "the procedures set out in said statute … did not comply with the requirements of the Fourteenth Amendment concerning deprivations of property without due process of law in relation to prejudgment seizures of property". After remand and after the pre-trial conference the equivocation as to Jones' position on what Alabama statutes, if any, he claims to be unconstitutional, *vel non,* were somewhat clarified when on March 5, 1986, Jones notified the Attorney General of Alabama pursuant to § 6–6–227, Ala.Code (1975) (a statute which requires that where any state statute is "alleged to be unconstitutional, the attorney general … shall … be served with a copy of the proceeding and entitled to be heard"), that Jones claimed unnamed Alabama statutes to be unconstitutional. Presumptively Jones was referring to §§ 35–11–5, 35–11–110 and 35–11–111, Ala.Code (1975), the statutes which he later specifically alleged to be unconstitutional in his motion for partial summary judgment filed on March 24, 1986. For aught appearing he is not attacking any other Alabama statutes or rules which deal with prejudgment attachment, although his brief describes Rule 64, Alabama Rules of Civil Procedure, as being unconstitutional and he lists §§ 6–6–41, 6–6–43 and 6–6–44, the general attachment statutes, as also being implicated. Whether he claims that any or all of these rules and statutes are unconstitutional is anybody's guess. It is also interesting that when applied to resident debtors §§ 6–6–43 and 6–6–44 have already been held to be unconstitutional by this court, a fact apparently not known to Jones' counsel. *Wiggins v. Roberts,* CV 75–M–1760 (unpublished opinion). After receiving Jones' notice the Attorney General filed a denial that any pertinent Alabama statute or rule is unconstitutional. Jones' motion for partial summary judgment challenging for the first time the constitutionality *vel non* of three statutes, §§ 35–11–5, 35–11–110 and 35–11–111, has previously been denied.

Preuit & Mauldin interpose five alternative alleged absolute defenses worthy of comment, viz:

1. Alabama's statutory prejudgment personal property attachment procedures are constitutional, especially (a) when invoked by a lien holder, and (b) where a judicial officer actually authorizes the prejudgment attachment. Therefore, defendants' invocation and employment of these procedures did not violate § 1983.

2. In the event the Alabama procedures are in some respects found to be constitutionally defective, Preuit & Mauldin is entitled to a qualified immunity from § 1983 liability because it invoked and employed the procedures without any obvious reason to believe that they were unconstitutional.

3. If Preuit & Mauldin did violate Jones' right to *procedural* due process, that right only involved interests in personal property, and inasmuch as Alabama provides adequate and valid post-deprivation procedures or remedies for the wrongful attachment of personal property, the rationale of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), precludes § 1983 as a federal remedy available to Jones.

4. Jones does not claim any violation of *substantive* due process. Thus, because the undisputed fact is that Jones actually owed Preuit & Mauldin most, if not all, of the money Preuit & Mauldin claimed (and as adjudicated by the state court), Jones impliedly waived or eliminated any § 1983 claim arising out of any possible technical violation of *procedural* due process because he did not invoke the procedures available in the state court proceeding.

5. Jones is barred by *res judicata* by virtue of the fact that he had the opportunity to litigate the same issues here presented in a prior proceeding in the state court in a direct confrontation with Preuit & Mauldin and either lost on the issues or failed to present the issues when he could have done so.

## THE PERTINENT UNDISPUTED FACTS

Jones, a farmer, owned three cotton picking machines. In the summer of 1981 Jones contracted with Preuit & Mauldin for the repair of the three pickers. After Preuit & Mauldin had completed the repairs and the pickers were delivered to Jones, Jones failed to pay Preuit & Mauldin for its labor and material. The Alabama mechanic's lien statute, § 35–11–110, Ala. Code (1975), by its terms automatically gave Preuit & Mauldin a lien on the pickers to secure the reasonable value of Preuit & Mauldin's labor and materials. Preuit & Mauldin's attorney (not the same attorney representing Preuit & Mauldin in the present case) prepared papers seeking to invoke §§ 35–11–110 (the mechanic's lien statute) and 35–11–111, (the procedural attachment statute) Ala.Code (1975), in order to obtain possession of the pickers and to enforce the mechanic's lien. He obviously overlooked the supplementary requirements of Rule 64, Alabama Rules of Civil Procedure. His papers consisted of three sets of the following (one for each picker): summons, complaint, attachment affidavit, bond, order and writ. An authorized agent of Preuit & Mauldin executed the affidavit and bond in each case in compliance with § 35–11–111, and the attorney then filed three separate actions (CV–82–21, CV–82–22 and CV–82–23) all in the Circuit Court of Lawrence County, Alabama. On February 17, 1982, he presented the papers to the circuit judge, Honorable Billy C. Burney, who thereupon entered orders authorizing the attachments and directing the clerk to issue writs which were duly issued and which were ultimately executed by the sheriff on April 8, 1982 when he actually attached the pickers. The sheriff's returns show service of the summonses and complaints to Jones on April 8, 1982. The amounts of the attachment bonds varied according to the sums claimed against each picker. In CV 82–21 the bond was for $15,000.00, in CV 82–22 $1,600.00, and in CV–82–23 $4,500.00. Pursuant to § 35–11–112, Ala.Code (1975), because there were other liens on the pickers, Preuit & Mauldin joined certain involuntary plaintiffs in the three cases in order to have the respective lien priorities judicially determined. One of these lienors was Citizens Bank.

On April 8, 1982, two of the involuntary plaintiffs filed motions to dissolve the writs of attachments in each of the three actions in Lawrence Circuit Court. At a hearing held on June 15, 1982, Jones actually testified in support of these motions to dissolve. On that date he obviously knew of the suits and of the attachments. However, he himself never answered any of Preuit & Mauldin's three complaints and a default was entered against Jones on each complaint on May 19, 1982. Jones claims never to have been served with any one of the summonses or complaints, contrary to what the state court record reflects. On July 12, 1982, Judge Burney denied the motions to dissolve filed by the other lienholders, finding that Preuit & Mauldin held the superior lien. Citizens Bank thereupon appealed in one of the cases to the Court of Civil Appeals of Alabama, which on November 24, 1982, (reh'g denied, January 5, 1983), reversed Judge Burney's holding that Preuit & Mauldin's lien was superior to that of the bank. Citizens Bank v. Preuit Estate, 425 So.2d 470 (Ala.Civ.App.1983). The appellate procedures of Alabama require that the notice of appeal be given to all who were parties in the lower court proceeding. Rule 3(d), A.R.A.P. Therefore, presumptively Jones could have participated in the appeal but apparently took no position in the Court of Civil Appeals. In its opinion the Court of Civil Appeals referred to Preuit & Mauldin's claim in the sum of $7,310.82 for the repairs to the cotton picker there involved and made no suggestion that the amount was not owed. 425 So.2d at 471.

On August 23, 1983, the same law firm which had represented Citizens Bank in the state court risked a conflict of interest by undertaking to represent Jones and filed motions in two of the state court actions, CV 82–21 and CV 82–22, on behalf of Jones seeking forfeiture of two of the attachment bonds. Jones invoked Rule 65.1, A.R.C.P., on the ground that the attachments had been wrongful, vexatious and were obtained without legal justification or authority. In other words, Jones mounted an attack *in the state court* on the attachments themselves and sought $15,000 in damages against Preuit & Mauldin and its sureties.

Jones' attack on the attachments may be explained by Citizens Bank's unsuccessful collection of what Jones owed it after the Court of Civil Appeals remanded in *Citizens Bank v. Preuit Estate, supra.* Citizens Bank also invoked Rule 65.1, A.R.C.P., through one of the lawyers now representing Jones, and sought "compensatory and punitive damages for wrongful attachment and conversion". This case winded its way to the Supreme Court of Alabama which, on September 13, 1985, held that Citizens Bank's failure to supersede Judge Burney's earlier adverse decision and to obtain a stay of his order later reversed by the Court of Civil Appeals eliminated any complaint it may have had for wrongful attachment or conversion against Preuit & Mauldin as a result of the interim sale of the picker to satisfy Preuit & Mauldin's lien and judgment. *Citizens Bank v. Mauldin,* 476 So.2d 103, 105 (Ala.1985). Jones, in his Rule 65.1 motion, made no express attack on the constitutionality of any of Alabama's attachment procedures, although there was nothing to prevent Jones from having done so as part of his Rule 65.1 motion. Could this have been because banks are reluctant to attack the constitutionality of procedures for attachment in aid of collection? At any rate in August and September, 1983, the pickers had been sold in satisfaction of Preuit & Mauldin's liens, and Judge Burney confirmed the sales. On November 29, 1983, Judge Burney dismissed Jones' Rule 65.1 motions attacking the attachments. Jones did not invoke either Rule 59 or Rule 60, A.R.C.P. or any other possible state court remedy. Jones gave no notice of appeal to any Alabama appellate court. Then, on February 24, 1984, Jones filed the instant action in federal court, seeking only monetary damages.

## CONCLUSIONS OF LAW

1. *Do Alabama's Prejudgment Attachment Procedures Meet The Requirements Of "Due Process"?*

■ A cardinal rule of judicial restraint is that courts should avoid a pronounce-

ment on the constitutionality of a statute if the particular controversy can be resolved without having to make such a pronouncement. *See, Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936), and *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981). Believing in this rule, and finding final answers to the issues in this case without resorting to constitutional pronouncements, this court respectfully declines to express itself upon the constitutionality *vel non* of Alabama's various prejudgment attachment procedures, and of the procedures actually employed under the peculiar facts of this case, particularly when Jones has not made it clear as to precisely which statutes and rules he finds ·constitutionally offensive. This court is still not sure exactly what statutes and rules Jones finds offensive. It would be especially unrestrained to undertake to decide the constitutionality of procedures not under attack and which are not directly implicated.

2. *Are Defendants Immune Under Harlow v. Fitzgerald?*

Assuming only for the sake of this analysis, but expressly without deciding, that one or more of Alabama's prejudgment attachment procedures is unconstitutional in one or more respects, can Preuit & Mauldin be held liable in damages for a violation of § 1983 for having employed these procedures in the way they were employed by Preuit & Mauldin on and after February 17, 1982?

A majority of the Supreme Court has not yet spoken squarely on the issue of whether or not private individuals acting under color of state law enjoy the qualified immunity defense in § 1983 actions discussed in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court, however, strongly suggests its approval of such a defense for non-officials. When the Court in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), held that private individuals who invoke prejudgment procedures with the help of state officials are acting under color of state law, it noted in footnote 23 as *dictum* that in an appropriate case private individuals thus acting under color of state law would be entitled to assert the same qualified immunity defense available to public officers. Footnote 23 says, *inter alia:*

> Justice Powell is concerned that private individuals who innocently make use of seemingly valid state laws would be responsible, if the law is subsequently held to be unconstitutional, for the consequences of their actions. In our view, however, this problem should be dealt with not by changing the character of the cause of action but by establishing an affirmative defense. A similar concern is at least partially responsible for the availability of a good-faith defense, or qualified immunity, to state officials. We need not reach the question of the availability of such a defense to private individuals at this juncture.

102 S.Ct. at 2756.

In dissent Justices Powell, Rehnquist and O'Connor happily agreed with the majority's concession in footnote 23. *Id.* at 2763–64, n. 14. This court believes that the Eighth Circuit correctly reads this concurrence of the majority and of the minority in *Lugar* when it concludes that private individuals are guaranteed the qualified immunity defense.

> ... [A]ccording qualified immunity to the defendants accommodates the competing interests involved here. On one hand, the good faith defense permits private creditors to seek redress under presumptively lawful statutes and allows state officials involved in garnishment actions to discharge their duties without fear of being subjected to frivolous lawsuits. *See Harlow v. Fitzgerald, supra*, 457 U.S. at 815–17, 102 S.Ct. at 2737, 73 L.Ed.2d at 408; *Wood v. Strickland*, 420 U.S. 308, 319–20, 95 S.Ct. 992, 999–1000, 43 L.Ed.2d 214 (1975). On the other hand, permitting private individuals to assert qualified immunity will not impair the public interest in deterrence of unlawful conduct and in compensation of victims which underlies section 1983. Indeed, the good faith defense promotes

that public interest because it allows recovery against individuals who take action that they know or reasonably should know violates the clearly established statutory or constitutional rights of debtors. *Harlow v. Fitzgerald, supra,* 457 U.S. at 819–21, 102 S.Ct. at 2739, 73 L.Ed.2d at 411.

*Buller v. Buechler,* 706 F.2d 844, 851 (8th Cir.1983).

■ A qualified immunity defense for private actors makes sense. It would be a serious anomaly for a *public* actor to be immune for his reasonable acts while a *private* actor who invokes exactly the same procedure alleged to have violated due process to be found liable. Arguably, a public official should have more reason to recognize the constitutionality or non-constitutionality of the procedures he uses every day than a private individual who uses them on a one-time basis. Indeed, the private individual usually depends on the public official. As the Supreme Court said in *Harlow* at 102 S.Ct. at 2738:

> ... a reasonably competent public official should know the law governing his conduct.

■ The defense of qualified immunity involves a so-called "objective" test and is appropriate for resolution by a court on motion under Rule 56, F.R.Civ.P. The general standards to be applied were enunciated by the Supreme Court in *Harlow* where the Court holds:

> ... government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not *violate clearly established statutory or constitutional rights of which a reasonable person would have known.* (emphasis supplied).

*Id.*

The Court further explains:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.*

When Preuit & Mauldin sought and obtained attachment writs against Jones on February 17, 1982, *Lugar* had not been decided. Assuming that Preuit & Mauldin had read the advance sheets they could not have read *Lugar* because it was not decided until June 25, 1982. It was not until *Lugar* that the general population could even theoretically know that private individuals utilizing prejudgment attachment procedures are acting under color of state law. Prior to *Lugar* private actors had good reason to feel insulated from § 1983 liability.

If the "reasonable man" doctrine required Preuit & Mauldin on February 17, 1982, to be familiar with the closest geographic and most recent binding federal decision on the issue of whether or not the enforcement of a mechanic's lien under § 35–11–110, Ala.Code (1975) constitutes "state action," it would have read *Turner v. Roy Bridges Motors, Inc.,* 436 F.Supp. 613 (N.D.Ala.1977), where Hon. J. Foy Guin, Jr., of this court ruled on the case of a mechanic who claimed a lien on an automobile, engaged in self-help in order to enforce his lien, gave no pre-seizure notice and did not even seek the participation by a court. Judge Guin there found that the plaintiff's use of § 35–11–110 "does not constitute 'state action' or action taken 'under color of state law' ". 436 F.Supp. 616. Understandably then failing to anticipate *Lugar,* Judge Guin went further to say:

> Even those jurisdictions reaching the issue of the constitutionality, *vel non,* of their state's garageman's lien statute have upheld the statute's constitutionality, notwith standing recent Supreme Court pronouncements closely scrutinizing the individual's right to fair notice and an opportunity to be heard prior to the seizure of his property. *Cf. Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969);

*Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). 436 F.2d at 617.

Judge Guin's opinion came four years after the opinion of Hon. Robert E. Varner in *Yates v. Sears, Roebuck & Co.,* 362 F.Supp. 520 (M.D.Ala.1973), which had found certain of Alabama's prejudgment attachment statutes unconstitutional.

If, instead of simply savoring *Turner,* the most recent "on-point" expression from the federal district court in the actual federal district where Preuit & Mauldin was in the business of repairing cotton pickers, Preuit & Mauldin had been super-cautious and had also researched and found the most recent expression from its state appellate courts as to the constitutionality of § 35–11–111, Preuit & Mauldin would have found *Allen Trucking Co. v. Adams,* 56 Ala.App. 478, 323 So.2d 367, *cert. quashed* 295 Ala. 390, 323 So.2d 375 (1975), where the Court of Civil Appeals found Alabama's prejudgment attachment procedures constitutional and reversed a lower court's dissolution of a writ of attachment entered by the clerk of court without a prior hearing. The Court of Civil Appeals there discussed *Fuentes, supra, Mitchell, supra, Di-Chem, supra,* and *Sniadach, supra,* the same cases discussed by Judge Guin in *Roy Bridges.* Without this court's agreeing or disagreeing with the Court of Civil Appeals in *Allen Trucking,* this court notes certain features which distinguish the procedure used in *Allen Trucking* from the procedure used in the instant case in favor of the safeguards followed by Preuit & Mauldin when compared to the procedure followed by Allen Trucking. At least two distinguishing features in Preuit & Mauldin's favor are:

A. Preuit & Mauldin had a security interest, i.e., a mechanic's lien on the specific property attached. Allen Trucking had no lien. It simply asserted an open account. *Mitchell, supra, upholds the prejudgment seizure of personal property without a prior hearing to enforce an existing lien.*

B. Allen Trucking obtained its writ of attachment from the *clerk,* whereas Preuit & Mauldin obtained its writ from a *judge* as a judicial act. The difference in the quality of pre-evaluation of the claim is obvious. As a matter of fact the Eleventh Circuit in *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. DeNavegacion,* 773 F.2d 1528 (11th Cir.1985), very recently found that a prejudgment attachment without a hearing complies with procedural due process when (1) there is a verified complaint; (2) a review by a judge with discretion to deny the writ; (3) a bond posted by the creditor; and (4) a reasonably timely opportunity to challenge the attachment. And *Schiffahartsgesellschaft* did not involve the protection of a security interest as in Preuit & Mauldin's seizure. The saving factor there was the judicial screening, a fact present in the instant case.

If Preuit & Mauldin's attachment lawyer had been super-sophisticated and super-careful on February 17, 1982, he might have read Rule 64(b), A.R.C.P., and the committee comments which follow it. Rule 64(b) is the Alabama procedural rule which modifies and elaborates § 35–11–111 and provides the method for seizing personal property when the creditor holds a security interest in it. If Preuit & Mauldin's lawyer had read Rule 64(b) and the committee comments, he would have read, *inter alia:*

When the action is for recovery or possession of specific personal property under the detinue statute (Code of Ala. § 6–6–250, *et. seq.*) *or any other provision of law whereby the owner of a security interest in personal property seeks to recover specific personal property prior to judgment [§ 35–11–110 and 111], the requirements of A.R.C.P. 64(b) are superimposed over the statutory procedure that otherwise exists in such cases.* Thus, the provision for prejudgment seizure that have long been found in the Code still apply but with and subject to the additional requirements of

A.R.C.P. 64(b). By way of example, the requirement of posting a bond as a necessary step in obtaining pre-judgment seizure as set forth at Code of Ala., § 6–6–250, remains in effect, but subject to the further requirements of A.R.C.P. 64(b) in the area of affidavit and proceedings thereon. (emphasis supplied).

Either Preuit & Mauldin's lawyer was unfamiliar with this comment, or he did not follow it. Nevertheless, if he was guilty of negligence, should his shortcomings as a lawyer constitute a violation *by Preuit & Mauldin* of Jones' constitutional rights?

It is true that on July 1, 1981, nearly a year before Preuit & Mauldin attached Jones' cotton pickers, Hon. Frank H. McFadden of this court in *Wiggins v. Roberts*, CV 75–M–1760, in an *unpublished opinion*, held that §§ 6–6–43 and 6–6–44, Ala.Code (1975), are unconstitutional when used to attach prior to judgment the personal property of a resident defendant. Apparently very few people have read Judge McFadden's opinion. The fact that in his brief Jones fails to cite this opinion, and the further fact that it does not appear in the annotations to the official Alabama Code, tends to prove that neither Preuit & Mauldin, nor its lawyer, should have been expected to worry over the possible implications in *Wiggins v. Roberts* or to have anticipated that similar, Alabama statutes might also be unconstitutional. The undersigned judge would not himself know about *Wiggins v. Roberts* except that he fell heir to the case after the retirement of Judge McFadden. See *Wiggins v. Roberts*, 551 F.Supp. 57 (N.D.Ala.1982).

■ How to "objectively" ascertain what a reasonable person should comprehend respecting the constitutionality of a particular statute or procedure is a difficult task, particularly when there appears to be substantial "subjectivity" on the Supreme Court itself. Nevertheless, using every objective standard and resource this court can muster, this court cannot conclude that on February 17, 1982, when Preuit & Mauldin started to attach Jones' cotton pickers, the norms for a constitutional prejudgment attachment of personalty under the Preuit & Mauldin facts, were so clearly established

against the constitutionality of the contemplated procedures as to have caused Preuit & Mauldin reasonably to foresee that the procedures were unconstitutional.

As the old Fifth Circuit noted in *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 533 (5th Cir.1978):

The courts and commentators have struggled mightily to harmonize this line of decisions. [referring to *Sniadach, Fuentes, Mitchell* and *Di-Chem* ]

The courts, and this court, are still struggling to "harmonize this line of decisions". While still struggling this court fortunately is not required to agree with Jones, on the one hand, or with Preuit & Mauldin and the Attorney General of Alabama on the other, as to the constitutionality *vel non* of the precise procedures employed by Preuit & Mauldin on February 17, 1982, or to decide the constitutionality of each and every Alabama statute and rule which was or may have been implicated. The court *does* decide that there was a legitimate debate on the constitutional question as of February 17, 1982, and therefore that *Harlow* shields Preuit & Mauldin from § 1983 liability.

■ Even if the state of the law on February 17, 1982, was such that an attorney should have had grave concerns about the constitutionality of Alabama's attachment procedures, Jones offers no evidence that such a concern was communicated to anyone in authority at Preuit & Mauldin. Indeed, the undisputed evidence on this subject consists of the affidavits of Edward F. Mauldin and Preuit Mauldin. They were completely unaware that the attachments were being sought. They relied upon their attorney, who prepared all of the papers and determined the steps to be followed. Unless the knowledge of an attorney in this context is automatically imputed to his client, or unless the client's liability can be predicated on *respondeat superior* through his lawyer, it is the reasonableness of Preuit & Mauldin's own knowledge concerning the constitutionality of the procedures that is crucial to the inquiry. The court declines to explore these issues of vicarious liability although raised by Preuit

& Mauldin, believing that this opinion already contains enough exploration into the unknown.

In his brief Jones mounts the following esoteric argument:

> ... Rule 64 [A.R.C.P.] did not stay current with the latest pronouncements of the U.S. Supreme Court, because it was never revised to apply to *attachments*, which are not for the recovery of specific property in detinue, but are for the specific purpose of recovering money by means of eventual sale of the property. The lien provided in § 35–11–110 is not a security interest; § 7–9–203 [Ala.Code 1975)]. (emphasis plaintiff's).

If true, this is not the stuff which turns on red flashing lights and rings bells crying out "UNCONSTITUTIONAL", and which the reasonable lien creditor should recognize as a warning that wipes out his *Harlow* immunity.

■ Incidentally, although Jones' motion for partial summary judgment, already denied, expressly attacked the constitutionality of § 35–11–110, which in another numbered code section was contained in the Alabama Code as early as 1876, created a lien for a "blacksmith, woodworkman or other mechanic who contributes his labor and material, or either, to the production, manufacture or repair of any vehicle, implement, machine or article of any kind", nothing in Jones' brief explains why this particular lien statute does not create a security interest or is unconstitutional. If the Alabama legislature had wanted to do away with the old mechanic's lien concept when it adopted the Uniform Commercial Code it would have done so. This court is unaware of any case which denies to a state the right to provide a mechanic's lien to secure the payment of labor and materials invested in personalty. The court sees no difference in principle between the concept of a mechanic's lien, recognized in most jurisdictions, and a vendor's lien specifically recognized in *Mitchell, supra,* and in most American jurisdictions.

Lastly, and interestingly, the court takes judicial notice of the fact that the judges and magistrates of the Northern District of Alabama, pursuant to Rule 64, F.R.Civ.P., have for years actually employed Alabama's attachment statutes and procedures as required by the following language of Rule 64:

> *Seizure Of Personal Property*
>
> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the *law of the state in which the district court is held,* existing at the time the remedy is sought ... (emphasis supplied.)

Logically, if the forum state's prejudgment attachment statutes are not constitutional, there can be no prejudgment attachment in a federal court sitting in that state. If Preuit & Mauldin reasonably should have known that the Alabama statutes which it invoked on February 17, 1982, were at that time unconstitutional, then the judges of this court, in order for Preuit & Mauldin to be held liable under § 1983, would be asking Preuit & Mauldin to have a constitutional perception and perspicacity of which they and their magistrates have been incapable and to recognize constitutional infirmities as to which they were conspicuously oblivious. In order to get around *Harlow,* Jones is forced to argue that Preuit & Mauldin should have been smarter than Judge Burney, smarter than the Attorney General of Alabama, smarter than the judges and magistrates of this court, and smarter than he and his lawyer were in 1982.

*3. Is Jones Precluded By Parratt v. Taylor Because Of The Availability Of An Adequate State Post-Deprivation Remedy?*

The rationale of *Parratt, supra,* as elaborated in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and as more recently explained by the Eleventh Circuit in *Rittenhouse v. DeKalb County,* 764 F.2d 1451 (11th Cir.1985), and *Economic Development Corp. of Dade Co. v.*

*Stierheim,* 782 F.2d 952 (11th Cir.1986), holds that an adequate state post-deprivation remedy is all a deprived *property* owner is entitled to by way of "due process" *unless* the unavailability or inadequacy of a pre-deprivation hearing is pursuant to an *"established state procedure".* This concept of "established state procedure" only appears as *dictum* in *Parratt* but is a part of the actual holding in *Logan v. Zimmerman Brush Company,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Neither the Supreme Court nor the Eleventh Circuit has waivered from the main holding in *Parratt.* The general rule on the subject is well expressed in *Hudson* as follows:

> Having determined that *Parratt* extends to intentional deprivations of property, we need only to decide whether the Commonwealth of Virginia provides respondent an adequate postdeprivation remedy for the alleged destruction of his property. Both the District Court and, at least implicitly, the Court of Appeals held that several commonlaw remedies available to respondent would provide adequate compensation for his property loss. We have no reason to question that determination, particularly given the speculative nature of respondent's argument.

104 S.Ct. at 3204.

Two questions, then, prompted by *Parratt,* must be answered in Preuit & Mauldin's case:

A. Did Alabama have an "established state procedure" which denied Jones a pre-deprivation notice and hearing?

B. If not, did Alabama provide Jones an adequate post-deprivation state remedy?

■ This court answers the first question by finding that on February 17, 1982, Alabama's statutes and procedural rules *did* provide for a pre-deprivation hearing pursuant to Rule 64(b), A.R.C.P. The fact that the Alabama procedural rules either were not comprehended or were not employed by Preuit & Mauldin and/or by Jones, or were misapplied by the clerk of court, or by the state court judge, or by the sheriff, does not create the *Parratt* exception. There were no "established state procedures" which, under these facts, denied

Jones a pre-deprivation hearing. Even assuming that § 35–11–111 by itself, without Rule 64(b) A.R.C.P., was unconstitutional as employed here by Preuit & Mauldin, Preuit & Mauldin nevertheless is insulated from a § 1983 claim because Alabama *did* provide an adequate predeprivation procedure even if it was not properly employed in this instance.

■ The second question must also be answered in Preuit & Mauldin's favor. Alabama provided Jones an adequate *post*-deprivation remedy. The fact that Jones improperly used or failed to use his *post*-deprivation state remedies does not change the ultimate fact of *Parratt's* applicability here.

■ First, Jones could have sought damages in the state court for wrongful attachment pursuant to Rule 65.1 A.R.C.P., as he, in fact, actually attempted to do. Rule 65.1 provides a method for making a claim upon an attachment bond when the attachment was wrongful. "Wrongful" includes "unconstitutional". The committee comment to Rule 65.1 says:

> This rule affords a remedy against a surety as an adjunct of the action in which the surety has provided the security.

One might legitimately debate the "adequacy" of this particular remedy, but in evaluating whether or not a remedy is "adequate" it must be kept in mind that the word "adequate", as used in *Parratt,* is not necessarily synonymous with the words "as good as or better than a § 1983 action". As this court interprets *Parratt,* Alabama's Rule 65.1 provided an "adequate" remedy.

If this court is incorrect, and if the remedy provided by Rule 65.1 is not "adequate", then what about § 6–6–148, Ala. Code (1975)? This statute surely provided an adequate remedy by saying:

> At any time within three years of the suing out of the attachment, before or after the action is determined, the defendant in attachment may commence an action on the attachment bond and may

recover such damages as he has actually sustained if the attachment was wrongfully sued out and, if sued out maliciously as well as wrongfully, the jury may, in addition, give vindictive damages.

If Jones had used this statutory cause of action as the basis for his claim against Preuit & Mauldin instead of using it simply to argue by analogy for a three year statute of limitations in § 1983 actions in Alabama (an argument rendered moot by *Wilson v. Garcia*), Preuit & Mauldin could not have interposed its "good faith" or *Harlow* defense, because it would not have been available in the state court. If the Alabama attachment procedures were in fact unconstitutional Preuit & Mauldin's honest belief that it was within its constitutional rights would have been no defense to a state claim brought under § 6–6–148. *Pollock & Co. v. Gantt*, 69 Ala. 373, 379 (1881); and *Jackson v. Smith*, 75 Ala. 97, 101 (1883). A complaint in the state court under § 6–6–148 could have been filed while the original action was still pending or after it was concluded so long as commenced within three years of the suing out of the attachment. Not only could Jones have recovered his pickers or the fair market value thereof, plus interest, but he could have recovered for any injury he sustained to his business, his credit and his reputation, and his lost time and expenses incurred in defense of the wrongful attachment, plus reasonable attorney's fees. *Vandiver & Co. v. Waller*, 143 Ala. 411, 39 So. 136 (1905); *Gramling-Spaulding Co. v. Parker*, 3 Ala.App. 325, 57 So. 54 (1911); *Higgins v. Mansfield*, 62 Ala. 267 (1878). Furthermore, in such a statutory action, exemplary or punitive damages could have been recovered if the writ was obtained in bad faith and without probable cause (such as where the unconstitutionality of the attachment procedures was discernible by the creditor?). *Hamilton v. Maxwell*, 119 Ala. 23, 24 So. 769 (1898); *Tiblier v. Alford*, 12 F. 262 (C.C.E.D.La.1882). The question of whether or not the attachment was wrongfully sued out would have been a jury question in the state court. *Hamilton v. Maxwell*, 133 Ala. 233, 240 32 So. 13 (1901).

In addition to this statutory cause of action under § 6–6–148, which this court finds to be entirely "adequate," Alabama has a well recognized independent common law cause of action for wrongful attachment which has features which arguably make it superior both to the statutory cause under § 6–6–148 and to a § 1983 action. *See, State v. Chandler*, 460 So.2d 1302 (Ala.Civ.App.1984). The recovery in such a common law action is clearly not limited to the amount of the attachment bond. Arguably, neither is an action under § 6–6–148. Not only could Jones have attacked the constitutionality of the procedure itself and alternatively complained of Preuit & Mauldin's failure to follow the procedure, but could have sought the fair market value of the property seized plus interest from the date of the levy. *Milner and Ketting Co. v. LeLoach Mill Mfg. Co.*, 139 Ala. 645, 36 So. 765 (1903). As a general rule such an action could also have included a claim for reasonable attorney's fees in defending against the wrongful levy. *Seay v. Greenwood*, 21 Ala. 491 (1952).

Last, it must also be kept firmly in mind that Jones had available to him Rule 60(b)(4) and (6), A.R.C.P., which provided him the right to ask the state court to relieve him from the effect of the judgment where "the judgment is void" or for "any other reason justifying relief from the operation of the judgment". It is difficult to conceive of a remedy more "adequate" than Rule 60(b)(4) and (6), as a means of attacking a judgment if procured without service of process and without notice, as Jones now alleges.

The various remedies provided Jones by the laws of Alabama are, if not each separately adequate, more than adequate in the aggregate. Therefore, Jones is precluded by *Parratt* and its line of successor cases.

■ Before leaving *Parratt* it is worth mentioning that Jones is not only complaining of a due process violation of his property rights (as opposed, for instance, to his right to life), but a fair analysis of his complaint reflects that its gravamen is *neg-*

*ligence* as in *Parratt* (even though *Parratt* was expanded in *Hudson v. Palmer, supra,* to include intentional violation and contracted in *Daniels v. Williams,* — U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), to eliminate all § 1983 actions based on negligence). In one of his briefs Jones concludes:

> Since plaintiff relied on unconstitutionality of the statutes and not on improper application of constitutional statutes, the case is cognizable under § 1983 ...

This argument may be an attempt to sidestep *Daniels v. Williams* as well as *Parratt,* but, if so, it fails. The court cannot even ascertain from the pleadings exactly which Alabama statutes and procedural rules Jones claims are here implicated and unconstitutional. Preuit & Mauldin's mistake, if it made a mistake on February 17, 1982, probably was in not comprehending and following Rule 64, A.R.C.P., which provided some, if not perfect, constitutional flesh for prejudgment attachment in Alabama. If *Parratt* and *Daniels* teach nothing else they teach that a negligent deprivation of property rights under color of law is not actionable under § 1983, especially when there is an adequate state post-deprivation remedy.

This discussion has been an attempt by this court to conduct the balancing test required by *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Using the factors set forth in *Eldridge* for answering the question of the adequacy of the state's processes, the court concludes that the state procedures in the aggregate balance quite favorably against the monetary relief here sought under § 1983.[1]

### 4. *Did Jones Waive Any Claim He May Have Had Of A Violation Of Procedural Due Process?*

Preuit & Mauldin proposes that the undisputed facts demonstrate that Jones voluntarily gave up any claim he may have had of a violation of the Fourteenth Amendment because Jones' only claim is one of *procedural* due process and he failed to take advantage of the state procedures then available to him. In the court's opinion, this is Preuit & Mauldin's weakest argument, but it nevertheless has enough merit to deserve comment.

For some reason unexplained in the record, Jones failed to challenge the attachment of his personalty until more than 18 months after the pickers had actually been seized. He has never denied owing Preuit & Mauldin almost all, if not all, of the money Preuit & Mauldin claimed for labor and parts. At pages 62 and 63 of his deposition taken on March 24, 1986, Jones testifies as follows:

> Mr. Putnam: Just so I understand you, Mr. Jones, you're not contending that for one reason or another Preuit & Mauldin was not entitled to be paid for that work, are you?
>
> Mr. Jones: No. I went down there and told them I was going to try my best to pay them.

*Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)

*Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)

*Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)

*Cleveland Board of Education v. Loudermilk,* — U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)

*Williamson Co. Regional Planning Commission v. Hamilton Bank,* — U.S. ——, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)

Van Alystyns, *Cracks in the "New Property": Adjudication Due Process in the Administrative State,* 62 Cornell L.Rev. 445 (1977).

Henry J. Friendly, *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267 (1975).

---

1. It would be academically interesting to explore the conflicts inherent in the various expressions by various justices of the Supreme Court in majority opinions, concurrences and dissents in the area of the procedures necessary to comply with "due process" when property rights are being affected and what interests constitute property rights. The nuances are myriad. The subject is too big for this opinion and unnecessary to it. Besides the authorities cited, the court recommends, not for a reconciliation of the decisions but for a recognition of the confusion, the following:

   *Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944)

   *Joint Anti-Facist Refugee Committee v. McGrath,* 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) Frankfurter, J. concurring.

Mr. Putnam: I'm just asking today as part of this law suit you are not now going to contend that they weren't entitled to be paid? You're in agreement that they should have been paid?

Mr. Jones: No. I was trying to pay them.

Jones' complaint in this court is limited strictly to a claim that he was denied "procedural due process". Nowhere does he claim a denial of "substantive due process". Jones obviously knew that his lien creditors had filed motions to dissolve the attachments because he himself testified in their behalf. When he did not join them with his own motion he simply relinquished a procedure clearly available to him. When he failed to avail himself of post-deprivation procedures provided under Alabama law by not joining the Rule 65.1 motions filed by his creditors, and the procedure provided by Rule 60(b)(4) and (6), A.R.C.P., it is hard for Jones seriously to contend that he did not voluntarily waive his procedural rights. Apparently he consciously chose to ride the coattails of his lender, that is, until the bank painted itself or litigated itself into a corner and then apparently turned to him for help. *See, Citizens Bank v. Mauldin*, 476 So.2d 103 (Ala.1985), and *Citizens Bank v. Preuit Estate*, 425 So.2d 470 (Ala.Civ.App.1982).

■ *Procedural* due process can be waived. This waiver can take place either expressly or impliedly. *Kaprelian v. Texas Woman's University*, 509 F.2d 133 (5th Cir.1975); *Downing v. Williams*, 624 F.2d 612 (5th Cir.1980); *Barnett v. City of Atlanta*, 707 F.2d 1571 (11th Cir.1983) and *Fern v. Thorp Public School*, 532 F.2d 1120 (7th Cir.1976).

■ It must be kept in mind that throughout the entire attachment process, from *before* actual seizure of two of the pickers in April of 1982 to June, 1982, when he testified at a hearing in behalf of other lien creditors seeking to dissolve the attachments, to August, 1983, when he filed motions seeking forfeiture of the attachment bonds, Jones was represented by and actively consulted with counsel. (*See,* Jones Deposition, pp. 22–23). Thus, one must conclude that Jones was fully aware of avenues by which he could challenge the attachments, if he had chosen to do so. Indeed, Jones consulted with his lawyer *before* two of the pickers were actually seized, but did not seek a hearing and did not seek to stay the seizures before they occurred. (*See,* Jones Deposition, pp. 14–15, 22–23). Under the circumstances it is clear that Jones, after consulting with his attorney, knowingly and intelligently allowed the attachments to occur without challenge. Such can only be viewed as a conscious waiver of his right to a pre-deprivation hearing. As a general rule the law requires a person to assert his rights, and failure to do so is at the peril of loss of the right.

The inevitable implication under these overall circumstances is that Jones waived any right that he may have had to procedural due process. Where both pre-deprivation and reasonably prompt post-deprivation procedures were clearly available to him and which could have provided him a serious opportunity to be heard, and they were not invoked, and when Jones offers no logical or persuasive explanation for his failure to invoke them, he has sat on his procedural rights in a way which constitutes a forfeiture of those rights.

**5.** *Is Jones Barred By Res Judicata?*

■ The most recent expression by the Eleventh Circuit on the Alabama law of *res judicata* is found in *Sykes v. McDowell*, 786 F.2d 1098 (11th Cir.1986). (Slip Op. April 15, 1986). There the Eleventh Circuit says:

> ... [T]he four elements of *res judicata* [in Alabama] are: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits.

*Id.,* at 1102 (citations omitted).

In *Sykes* the Eleventh Circuit also acknowledges this further Alabama principle:

... [U]nder Alabama law, *res judicata* applies to issues that *could have been litigated* (emphasis supplied).

*Id.*

In the instant case the prior judgment entered by Judge Burney against Jones in response to Jones' formal demand for a forfeiture of the attachment bonds on the ground that the attachments were wrongful, vexatious and without legal justification, was a judgment entered by a court of competent jurisdiction. Presumptively the judgment was entered on the merits, inasmuch as Judge Burney's decree contains no rationale and no reference to its being without prejudice. The, parties in that case and this case are not only "substantially identical" but are *absolutely identical.* Jones' claim there either was identical to his claim here, or his claim here *could have been* presented to Judge Burney. As a matter of fact and law Jones could even have invoked § 1983 in his state court attack on the attachments, although there, as here, he would have had to face the obstacles inherent in *Parratt* and *Harlow.*

As an alternative to filing his Rule 65.1 motions seeking forfeiture of the bonds for wrongful attachments, Jones could have chosen to file or to add a new cause of action alleging liability based on § 1983, § 6–6–148, Ala.Code, and/or on common law wrongful attachment. He chose, however, to present his claim of wrongful attachment via his Rule 65.1 motion alone. In so doing, the claim of wrongful attachment was properly before Judge Burney, and, when he lost on his motions after hearing before the state court, Jones is just as bound by Judge Burney's decision as if he had litigated and lost an alternative cause of action. Jones chose which avenue of attack to follow. He must accept the final and binding decision arrived at as a consequence of his own choice.

Jones did not appeal from the adverse state court ruling entered by Judge Burney. That was the end of the line for him if *res judicata* is to perform its conceptual purpose of stopping repeat courtroom confrontations between the same parties. Strangely, but significantly, Jones in this case does not attempt to collaterally attack Judge Burney's ruling.

Jones' 1982 lawyer may have made strategy errors in the state court proceeding, but this court does not provide a forum for straightening out a litigant's forensic mistakes made in other courts. The Lawrence Circuit Court adjudication has the essential earmarks of *res judicata.*

## CONCLUSION

While some of the defenses interposed by Preuit & Mauldin on the undisputed facts are found by this court to be more persuasive than others, in the aggregate they require the granting of summary judgment against Jones. If this court were called upon to decide whether Preuit & Mauldin's lawyer on February 17, 1982, was negligent and/or whether Jones' lawyer in the state court was contemporaneously negligent, the challenge then would be greater, the hill harder to climb and the inquiry more interesting than the questions presented by Preuit & Mauldin's present Rule 56 motion, which is due to be granted.

An appropriate separate order will be entered.

## ADDENDUM TO MEMORANDUM OPINION

After the final order was entered on May 23, 1986, three pertinent decisions by the Eleventh Circuit Court of Appeals have come to the court's attention. They slipped through the crack while the opinion was in preparation. One bears on the *Harlow* defense of qualified immunity. One bears on an issue not previously discussed, namely, whether a private individual's use of a state court under recognized state procedures can trigger a § 1983 violation. And one bears on the issue of waiver of a procedural due process violation.

The first of these cases is *Booker v. City of Atlanta,* 776 F.2d 272 (11th Cir.1985). It involves assistance rendered by a uniformed police officer in the private repossession of two trucks. The ruling would have been no different if the items repos-

sessed had been cotton pickers. The Eleventh Circuit there holds:

> If Couvillion's [the police officer's] actions were within the scope of his official duties, he is immune from suit *if he acted under a good faith belief that the actions were legal. See Clark v. Beville,* 730 F.2d 739 (11th Cir.1984); *Sellers v. United States,* 709 F.2d 1469 (11th Cir.1983). Couvillion properly alleged good faith in his answer and Booker has offered no evidence to rebut this claim. (emphasis supplied).

776 F.2d at 274. In Preuit & Mauldin's case the repossessor, a private actor, did not employ self-help as in *Booker.* Instead, it invoked the jurisdiction of a court. There is no evidence whatsoever in the record to indicate that Preuit & Mauldin lacked a good faith belief that the action it took was legal.

The second case is *McDougald v. Jenson,* 786 F.2d 1465 (11th Cir.1986). It holds:

> It is the general rule in this circuit that a private individual does not act under color of state law by engaging in litigation, even in bad faith, unless that individual is compelled by state law to bring suit or is acting under the authority or pretense of the authority of the state. *Dahl v. Akin,* 630 F.2d 277, 281–82 (5th Cir. 1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1977, 68 L.Ed.2d 296 (1981). In our decisions in *Gresham Park Community Organization v. Howell,* 652 F.2d 1227 (5th Cir. Unit B 1981), and *Henry v. First National Bank of Clarksdale,* 595 F.2d 291 (5th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980), we recognized an exception to the usual rule where "the unlawful act was the use of a prohibitory state statute given an allegedly unconstitutional construction by the [state] courts. *Gresham Park Community Organization v. Howell,* 652 F.2d at 1240.

786 F.2d at 1488–89. Although there is not the slightest showing of bad faith on the part of Preuit & Mauldin, its suit in the state court invoked laws that had never been given an "unconstitutional construction by the state courts." This case, of course, does not address the issue of a prejudgment attachment statute as did *Lugar, supra.* Under a strict application of the *McDougald* rationale, Preuit & Mauldin would not have been acting under color of state law within the contemplation of § 1983. This issue was not argued by the parties, probably because of *Lugar.*

The last case is *Grandison v. Smith,* 779 F.2d 637 (11th Cir.1986), in which the Eleventh Circuit comments as follows in regard to a person's ability to waive a deprivation of his *procedural* due process, as contrasted to *substantive* due process:

> We find the real question to be whether plaintiffs-appellees can make out a Section 1983 claim of denial of property without due process if they fail to request a hearing under established procedures. Ordinarily the answer is "no." Failure to request a hearing is deemed a waiver and the due process claim expires. *Hoffman v. United States Department of Housing and Urban Development,* 519 F.2d 1160, 1165 (5th Cir.1975). But to constitute a waiver that failure must follow "fair notice [of termination] and an effective opportunity to respond...." *Downing v. Williams,* 624 F.2d 612, 630 (5th Cir.1980) (dissenting opinion of Ainsworth, J., adopted as majority opinion upon rehearing, 645 F.2d 1226 (5th Cir. 1981)).

779 F.2d at 641–42. In the instant fact situation Jones had more than fair notice of the attachments of his property and ample opportunity to avail himself of established procedures for contesting these attachments. *Grandison* lends more merit to Preuit & Mauldin's argument of "waiver" than this court had previously given it.

The Memorandum Opinion of May 23, 1986 is hereby amended to add the foregoing.