Johnny L. **GRANDISON**, et al.,
Plaintiffs-Appellees,

v.

John H. **SMITH**, Mayor, et al.,
Defendants-Appellants.

No. 85–7123.

United States Court of Appeals,
Eleventh Circuit.

Jan. 10, 1986.
Rehearing and Rehearing En Banc
Denied March 10, 1986.

---

**6.** Federal Rule of Evidence 607 allows a party to impeach his own witness.

Michael A. Figures, Mobile, Ala., for defendants-appellants.

Vaughan Drinkard, Jr., Mobile, Ala., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, JOHNSON, Circuit Judge and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

We are called upon to decide whether a trial court properly refused to overturn a general jury verdict under 42 U.S.C.A. § 1983 (1985) in favor of two municipal employees who claimed they were effectively terminated, by means of a layoff order, without affording them the usual right to a hearing. We AFFIRM the judgment of the district court in all respects.

## I. BACKGROUND.

Appellant John Smith is mayor of Prichard, Alabama. He and other city officials were sued in their official capacities by appellees Johnny Grandison and Alvin Stoutamire, formerly employees of the City of Prichard Housing Authority ["the Authority"]. Prior to Smith's installation as mayor in October of 1980, Grandison was the Acting Director of the Authority's Community Development Program ["CDP"]. Stoutamire was a Building Inspector and assumed Grandison's prior position as Housing Officer while Grandison was holding the directorship. Smith came into office and swept out a number of employees, substituting his own supporters. Grandison was removed from the director's position and replaced by appellant Claude Curtis. Grandison returned to his old job as Housing Officer, bumping Stoutamire down to Building Inspector.

Mayor Smith removed the CDP from the Authority's control and ran the CDP out of his office. The usual rules and policies for personnel administration followed by the Authority's commissioners were suspended and all decisions were made solely by the mayor. After a number of complaints about the patronage policies of the Smith administration, Mobile County authorities threatened to bring the CDP under the county merit system. In response to these complaints, about the time appellees were laid off, Smith surrendered administrative control over the program back to the Authority. Appellant Michael Cleveland was Chairman of the Authority at the time appellees left the city payroll.

On March 11, 1981, appellees received written notice that they were being laid off due to a lack of administrative funds sufficient to pay their salaries. Whether there actually was a shortfall was contested. Shortly after appellees were laid off the CDP hired several new employees. Most had worked in the Smith campaign. The record also discloses that appellant Curtis neither got along well with appellees nor felt he could control them.

Upon layoff appellees retained counsel who demanded that they be paid all accumulated compensatory time, sick leave, vacation and back pay within five days upon threat of litigation. The City paid them $2,000. The City is resolute that the appellees were only laid off and that it expected to recall them until appellees demanded payment for all accrued time. The City's counsel wrote appellees following the demand for settling accounts and advised them that if benefits were paid it would "permanently sever their relationship" with the CDP.

Shortly thereafter appellees filed for unemployment insurance compensation ["U.I."]. Appellant Curtis challenged appellees' entitlement to U.I. on the grounds that Grandison had been terminated for a dishonest act.[1] Based on Curtis' comment the appellees brought suit under Section 1983 claiming denial of due process through termination without notice or a hearing. They argue that Smith and his cohorts conspired to terminate appellees for patronage purposes. Appellants responded with a motion to dismiss for failure to state a claim and failure to exhaust administrative remedies. The court denied these motions. The case was tried before a jury on May 24, 1984, with appellants filing

---

1. Apparently there were some irregularities in Grandison's handling of accounts, discovered by an audit by the United States Department of Housing and Urban Development after he left the Acting Directorship. There were also allegations that keys and files were missing.

motions for directed verdicts at the appropriate times. The jury returned verdicts in favor of appellees, awarding Grandison $62,500 and Stoutamire $37,500.

Following the verdict, the appellants moved in the alternative for judgment *non obstante veredicto* or for a new trial, alleging that the verdict went against the weight of the evidence. The trial court denied these and entered final judgment. Appellants filed an amended motion for new trial for failure to exhaust administrative remedies. On January 9, 1985, the court issued an order granting the motion for a new trial as to appellant Smith unless appellee Grandison produced and filed a remittitur of all of the verdict in excess of $40,961.28 and unless appellee Stoutamire produced and filed a remittitur of his verdict in excess of $33,743.36. Appellees agreed to this and the motion was then denied. The court denied motions for new trials and to set aside judgments as to all other defendants. This appeal was filed on February 7, 1985.

## II. DISCUSSION.

The appellants present four issues: A) that the trial court erred in denying motions for post judgment relief and for a new trial because evidence did not support the jury's verdict; B) that they had no obligation to offer appellees a hearing; C) that appellees were obligated to exhaust administrative remedies before coming to court; and D) that appellant Cleveland should have been dismissed.

### A. The Jury Verdict and the Motions.

Both parties agree that the dispositive issue is whether appellees were terminated without a hearing. If so, the appellants admit they are liable. Appellants repeatedly moved for directed verdict on this question at trial, which the court rejected, finding sufficient evidence to warrant sending the case to the jury. The appellants argue that the evidence produced at trial was no more than a "mere scintilla" and not enough, under our decision in *Williams v. City of Valdosta,* 689 F.2d 964, 970 (11th

Cir.1982) (relying on *Boeing v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (*en banc*)), to support the refusal to direct a verdict.

The test for determining whether a court properly withheld judgment *n.o.v.* is the same as that for determining if it properly denied a motion for a directed verdict. We must examine evidence "in the light and with all reasonable inferences most favorable to the party opposing the motion. ' "[I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied...." *Boeing Co. v. Shipman....*'" *Williams v. United Insurance Co. of America,* 634 F.2d 813, 815 (5th Cir. Unit B 1981).

Likewise, as to the denial of the motion for a new trial, on appeal "we are not reviewing 'sufficiency' in its technical sense.... we are reviewing whether the district judge has abused his judicial discretion in denying a new trial or whether as a matter of law the denial of a new trial was erroneous because there was an 'absolute absence of evidence to support the jury's verdict.'" *Collins by and through Kay v. Seaboard Coast Line Railroad Co.,* 675 F.2d 1185, 1197 (11th Cir.1982) (quoting *Urti v. Transport Comm. Corp.,* 479 F.2d 766, 769 (5th Cir.1973)).

These standards of appellate review are stringent indeed. A very thorough review of American case law fails to disclose a single instance where, due to insufficient evidence, a court of appeals overturned a jury or bench verdict granting relief under Section 1983. This is hardly surprising, for sound jurisprudential considerations require that we find the trial court indiscrete only in circumstances of egregious error. This is especially so in a case, such as that instant, involving "simple issues, [and] highly disputed facts, ... [where] there is an absence of 'pernicious occurrences,' ... [in which case courts] should be considerably less inclined to disturb a jury verdict." *Williams v. City of Valdosta,* 689 F.2d at 974.

Even if we review the substantiality of the evidence in this appeal under the standard most favorable to appellants, that of *Williams* and *Boeing,* it is our province to disturb the judgment below only if we find a lack of evidence sufficiently substantial to support the conclusion that the jury drew. Appellees did not make out the strongest conceivable case; on *de novo* review reasonable courts might come to contrary conclusions. But because the evidence is not insubstantial, we must affirm the trial court's refusal to grant any of the forms of post judgment relief sought.

The most important evidence is the admission, on the record below, of appellant Curtis that he told an Alabama Unemployment Compensation appeals referee that the decision to "lay off" appellees was predicated not only on lack of funds for salaries but also because appellees' uncooperativeness had created hostility. The decision to let them go, due to their inability to get along with Mr. Curtis, was made "[b]efore I even realized there was a lack of funds." On objection from counsel for the defendants-appellants, the court at side bar recognized that the statement was not completely inculpatory "So I will let the jury decide what he is saying." Record Vol. 3, pp. 378–80.

At another point in Curtis' testimony he conceded that he told the U.I. referee that Grandison was terminated for dishonest acts in office relating to missing files and keys. Vol. 3, p. 390. Here too the statement was somewhat ambiguous, but the court allowed it to come in for the jury's consideration.

■ Beyond this is the fact that Smith took control over the CDP, allowed former campaign workers who were not staff members to use office space in the CDP building, and hired these supporters for CDP work shortly after appellees were laid off, despite the supposed paucity of funds. There were multiple incidents of harassment and intimidation by the mayor, not only of appellees but also of other CDP workers who subsequently resigned. From the record, reviewed in its totality,

the decision to submit this case to the jury, and to uphold its decision that appellees were terminated for political reasons, was not clearly erroneous. The quantum of evidence was sufficient to rise to the level of substantiality.

**B. The Hearing Requirement.**

The trial court found as a matter of law that the Authority's regulations "give rise to proprietary interest on the part of the plaintiff [in continued employment] protected by the due process clause...." Both parties agree that entitlement to a hearing before denial of this interest is governed by these regulations. The court found that the regulations entitled a dismissed employee "if he desires it ... [to] a hearing by the grievance committee."

■ There is no dispute that appellees did not ask for or get a hearing. The parties state the question as being whether the Authority had affirmatively to offer appellees a hearing or merely to have a hearing mechanism available if appellees chose to invoke it. That question is settled. When continued employment constitutes a proprietary interest, due process requires only that an employer afford an *"opportunity* for some kind of a hearing...." *Board of Regents v. Roth,* 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 2705 n. 7, 33 L.Ed.2d 548 (1972) (emphasis added).

■ We find the real question to be whether plaintiffs-appellees can make out a Section 1983 claim of denial of property without due process if they fail to request a hearing under established procedures. Ordinarily the answer is "no." Failure to request a hearing is deemed a waiver and the due process claim expires. *Hoffman v. United States Department of Housing & Urban Development,* 519 F.2d 1160, 1165 (5th Cir.1975). But to constitute a waiver that failure must follow "fair notice [of termination] and an effective opportunity to respond...." *Downing v. Williams,* 624 F.2d 612, 630 (5th Cir.1980) (dissenting opinion of Ainsworth, J., adopted as majority opinion upon rehearing, 645 F.2d 1226

(5th Cir.1981) ). If these were not accorded, there can be no waiver.

The Authority's grievance procedure provides for a hearing panel. A complaint must be filed within five working days after the complained-of termination. Employees slated for termination must be given thirty days' notice so that they can file grievances if they desire, giving them a total of thirty-five days during which to request a hearing. Appellees were not given the thirty-day notice of termination. The jury could reasonably infer that this affair was conducted under the pretext of being a temporary layoff and that only later did evidence appear suggesting that the *sub rosa* purpose was to oust appellees in favor of Smith's supporters. On appeal, our review of a jury's finding of fact is narrowly limited to a review of the sufficiency of the evidence supporting its finding of no notice. "We are 'bound to view the evidence in the light most favorable to (the plaintiff) and to give (him) the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn.' *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696 [82 S.Ct. 1404, 1409, 8 L.Ed.2d 777] (1962).... If, ... after viewing all the evidence most favorably to plaintiff, we cannot say that the jury could reasonably have returned the verdict in his favor, our duty is to reverse the judgment below." *Michelman v. Clark-Schwebel Fiber Glass Corp.*, 534 F.2d 1036, 1042 (2d Cir.) (parallel citations omitted), *cert. denied*, 429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976).

■ Under this standard, we cannot say that the evidence supporting the jury's finding of no notice, when viewed as a whole, was legally insufficient. To abort an otherwise tenable Section 1983 claim in this case would encourage employers to utilize the same termination technique employed here. Merely characterizing the cessation of employment as a layoff instead of a termination would allow the employer to void the employee's rights to a due process hearing. We are not prepared to permit such a result.

## C. Failure to Exhaust Administrative Remedies.

The appellants argue that appellees should be required to exhaust the available grievance mechanism before being heard on their Section 1983 claim.

■ This argument is meritless. There is no exhaustion of state remedies requirement for Section 1983 claims. *Patsy v. Florida Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); *McNeese v. Board of Education*, 373 U.S. 668, 671–73, 83 S.Ct. 1433, 1435–36, 10 L.Ed.2d 622 (1963); *Southern Railway Co. v. State Board of Equalization*, 715 F.2d 522, 529 (11th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

## D. The Appellant Cleveland.

Michael Cleveland is a long-time member of the Authority's Commission. Shortly after Smith became mayor, Cleveland became chairman. He is sued in his official capacity and claims that, because Smith controlled personnel decisions, he was not responsible for appellees' plight and accordingly should have been dismissed from the case. He also argues that if the Commission be liable it should be sued in its corporate capacity, not through its head.

The court refused his motion on the grounds that there was sufficient evidence to send the question to the jury. The court's refusal to dismiss is equivalent to refusal to direct a verdict and is governed by the standard of *Boeing* whereby we examine the evidence in the light most favorable to one opposing this motion. The jury's determination that Cleveland was in part to blame for this matter is subject to reversal only if there is no substantial evidence to support the verdict. *Michelman*, 534 F.2d at 1042.

■ The evidence here was not insubstantial. Whether Cleveland had any direct hand in the decision, both sides admit

that appellees' employment status was governed by regulations promulgated by the Commission that he chaired. The jury could reasonably find that the Commission's failure to intervene to protect appellees' rights made it in part responsible for the denial of due process. Nonfeasance as well as misfeasance will support a Section 1983 claim. *Bogard v. Cook,* 586 F.2d 399, 412 (5th Cir.1978), *cert. denied,* 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). Nor did Cleveland produce evidence sufficient to create a qualified immunity defense. *Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980); *Douthit v. Jones,* 619 F.2d 527, 534 (5th Cir.1980). There is nothing unusual about suing the director of an agency under Section 1983 to assert claims against the agency generally. *Brandon v. Holt,* —— U.S. ——, —— – ——, 105 S.Ct. 873, 878–79, 83 L.Ed.2d 878 (1985). As chairman of that body at the relevant time, Cleveland could reasonably be held liable in his official capacity.

### III. CONCLUSION.

For the reasons explained above, we find no merit to any of the appellants' contentions. Under the applicable standards of review there is no reversible error. Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.

GODBOLD, Chief Judge, concurs in the result.