### SOUTH CENTRAL TERMINAL CO., INC., Plaintiff–Appellant,

v.

### UNITED STATES DEPARTMENT OF ENERGY and James D. Watkins, as Secretary of Energy, Defendants–Appellees.

TECA No. 3–58.

Temporary Emergency Court of Appeals.

Argued Sept. 13, 1990.

Decided Oct. 22, 1990.

Judgment Entered Oct. 31, 1990.

David G. Wilson, Andrews & Kurth, Washington, D.C., was on the brief, for plaintiff-appellant.

Marc E. Kasischke, with whom Don W. Crockett, Judicial Litigation Div., Economic Regulatory Admin., U.S. Dept. of Energy, Washington, D.C., were on the brief, for defendants-appellees.

Before HOFFMAN, METZNER and DAUGHERTY, Judges.

METZNER, Judge:

Plaintiff, South Central Terminal Co., Inc. ("SCT"), appeals from an order of the United States District Court for the District of Delaware, granting the cross-motion of defendants, the United States Department of Energy ("DOE"), and James D. Watkins, as Secretary of Energy, for summary judgment. 728 F.Supp. 1083.

The question for review is whether the DOE's determination that a product sold by SCT was covered by the Mandatory Petroleum Price Regulations ("Regulations") was clearly erroneous.

In 1976, SCT purchased and began to operate an oil refinery in Pana, Illinois. From July 1978 through December 1979 (the "audit period"), it produced and sold Leaded Straight Run ("LSR"), a blend of naphtha, lead and various hydrocarbon products. SCT intially sold LSR at $.3935 per gallon and increased the price periodically thereafter. During the period in which it produced and sold LSR, SCT failed to file with DOE the monthly cost allocation form required of gasoline refiners pursuant to the Regulations. The Regulations stipulate that a refiner of a covered product who fails to file periodic reports is prohibited from increasing the price of the

covered product until it complies with the Regulations. 10 C.F.R. § 212.130.

On March 17, 1983, the DOE issued a Proposed Remedial Order ("PRO") to SCT pursuant to 10 C.F.R. § 205.192 alleging that SCT had violated DOE reporting and pricing regulations. Specifically, the PRO alleged that SCT, a "refiner" as defined in the Regulations, had sold a covered product "gasoline" beginning in July 1978, but had failed to file the required reports with DOE. The validity of DOE's allegations was affirmed by a Remedial Order issued by DOE's Office of Hearings and Appeals, which in turn was affirmed by both the Federal Energy Regulatory Commission ("FERC") and the United States District Court for the District of Delaware.

SCT claims that the Regulations did not require it to file a monthly cost allocation report because its product LSR was not "gasoline" as defined by the Regulations, and so was not a "covered product." SCT thus contests DOE's determination that SCT was required by the Regulations to file Form EIA–14, the Refiner's Monthly Cost Allocation Report.

■ The issue we consider is whether DOE's determinations that LSR was gasoline as defined by the Regulations and that SCT should have filed Form EIA–14 were clearly erroneous. This court has held that "great deference" is to be given an agency's interpretation of its own regulations. *Thriftway Co. v. DOE,* 867 F.2d 1577, 1580 (Temp.Emer.Ct.App.1989); *Exxon Corp. v. DOE,* 802 F.2d 1400 (Temp. Emer.Ct.App.1986). Thus, if the findings upon which DOE's decisions were based are supported by substantial evidence in the record, we must affirm, even if alternative conclusions are equally or more reasonable and persuasive. *Mr. Magic Car Wash v. Department of Energy,* 596 F.2d 1023, 1028 (Temp.Emer.Ct.App.1978). The Supreme Court has defined substantial evidence as "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ The Regulations provide, in pertinent part, that "refiners [of] ... covered products" are required to "prepare and file with the [Federal Energy Administration] FEA periodic reports in accordance with forms and instructions issued by FEA." 10 C.F.R. § 212.126(b). "Covered products" is defined by the Regulations as "aviation fuel (kerosene-type), aviation gasoline, butane, crude oil, gasoline, natural gas liquids, natural gasoline, and propane." 10 C.F.R. § 212.31. This same section of the Regulations defines "gasoline" as "all of various grades, other than aviation gasoline, of refined petroleum naphtha which, by its composition, is suitable for use as a carburant in internal combustion engines."

It is undisputed that LSR is covered by this definition. However, on this appeal, SCT first argues that it was not required to file Form EIA–14 because the Regulations require refiners to file statements in "accordance with the forms and instructions issued by the DOE" and the line by line specific instructions on Form EIA–14 did not request information for the product LSR.

Line 70(2) of the form calls for information regarding leaded regular gasoline as "defined in" the American Society for Testing Materials ("ASTM") specifications, ASTM D 439–75. The ASTM issues an annual book of standards which establishes both definitions and specifications for material and products such as gasoline. Despite DOE's use of the words "defined in" in Form EIA–14, 70(2), the reference is in fact to an ASTM specification. It is undisputed that LSR does not meet these specifications.

SCT's argument is without merit for several reasons. Form EIA–14 contains four sections preceding the pages to be filed entitled respectively: "General Information," "General Instructions," "Definitions," and "Specific Instructions." There is no definition of gasoline in the "Definition" section of the form. Rather, there is a definition of "covered products" which includes "crude oil, gasoline, natural gas liquids, and propane" and blends thereof. (Definition III) This definition cites to 10

C.F.R. § 212.31, quoted above, the plain language of which broadly defines gasoline so as to include LSR.

Moreover, the ASTM specifications themselves note that they are not to be interpreted as a definition of gasoline. Section 1.2 of ASTM D 439–75 states that "[t]hese specifications are not a definition of gasoline." Rather, the specifications are intended to serve as "guidance in establishing between purchaser and seller the required properties of automotive gasoline for grounds vehicles." Section 1.1 ASTM D 439–75. With this background, it is clear that SCT should not have assumed that the reference to ASTM specifications represented a new definition of gasoline.

Furthermore, the introductory note to the Specific Instructions section in Form EIA–14 states that "should differences arise between the provisions of the Regulations and the definitions set forth below, the regulations shall be controlling." Thus, were we to accept SCT's contention that Form EIA–14 establishes a more narrow definition of gasoline than that set forth in the Regulations, an inconsistency would exist which would be resolved by the wording of the Regulations.

Finally, the legislative and regulatory history of 10 C.F.R. § 212.31 indicate that a broad, rather than a narrow definition was intended. The preamble to the 1975 amendment which established the present language of the Regulations' definition of gasoline states that "Congress intended to provide for the regulation of a broader range of petroleum products than those that meet the technical specifications of the products enumerated by the [Emergency Petroleum Allocation] Act." 40 Fed.Reg. at 2795. The plain meaning of the 1975 amendment indicates that the definition was intended to be synonymous with the ASTM D 288–61 *definition* of gasoline rather than the ASTM D 439–75 *specifications* of gasoline. The ATSM D 288–61 definition reads as follows: "Gasoline—a refined petroleum naphtha which, by its composition, is suitable for use as a carburant in internal combustion engines."

The court below properly found that the determination by DOE was not clearly erroneous.

The order of the district court granting summary judgment to the defendants and affirming the determinations of the FERC and the DOE is affirmed.